IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ERIC ELLIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-00234-O-BP |
| | § | |
| BEN E. KEITH COMPANY, | § | |
| | § | |
| Defendant. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support (ECF No. 8) that Defendant Ben E. Keith Company filed on March 28, 2025, the Opposition to Motion to Dismiss (ECF No. 14) that Plaintiff Eric Ellis filed on April 7, 2025, and the second response Eric Ellis filed on September 14, 2025 (ECF No. 23).

After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** Defendant's Motion to Dismiss **in part** and **DISMISS** Plaintiff's claims for retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 and for violation of the Fourth Amendment of the United States Constitution. After dismissing Ellis' federal law claims, Chief Judge O'Connor should decline to exercise supplemental jurisdiction over the remaining state law claims and **REMAND** them to the 352nd Judicial District Court of Tarrant County, Texas.

I.      BACKGROUND

In September 2023, Eric Ellis applied for a warehouse job with the Ben E. Keith Company ("BEK"). ECF No. 7 at 2. As a part of the interview process, BEK required him to undergo drug screening, which involved producing a urine sample at a third-party testing facility. *Id.* at 2-3.

While at the testing facility, Ellis provided a urine sample. *Id.* at 3. However, according to Ellis' First Amended Complaint, "[a] second urine sample was requested." *Id.* This time, a male employee of the testing facility would be present to monitor the sample collection. *Id.* But Ellis refused. *Id.* Consequently, BEK did not offer Ellis a job. *Id.*

In February 2025, Ellis sued BEK seeking damages and injunctive relief "to redress Defendant's unconstitutional preemployment drug screening practices against" him. ECF No. 1. BEK removed the case on March 10, 2025 based upon federal question jurisdiction. *Id*. In his First Amended Complaint, Ellis alleges seven causes of action: (1) Retaliation in Violation of 42 U.S.C. § 1981, (2) Retaliation in Violation of Title VII of the Civil Rights Act of 1964, (3) Retaliation in Violation of Texas Labor Code § 21.055, (4) Violation of the Fourth Amendment of the United States Constitution, (5) Breach of Contract, (6) Invasion of Privacy, and (7) Intentional Infliction of Emotional Distress ("IIED"). ECF No. 7 at 5-11.

BEK now moves to dismiss the entirety of Ellis's First Amended Complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). ECF No. 8. BEK argues (1) that Ellis has failed to plausibly allege he engaged in any protected activity to support his federal and state retaliation claims, (2) that BEK is a private employer and accordingly not subject to the Fourth Amendment, and (3) that Ellis has failed to sufficiently allege facts to support his remaining three claims. *Id.* at 2.

In response, Ellis argues that he "reasonably believed BEK's testing policy violated Title VII and Section 1981. His refusal and protest were therefore protected activity." ECF No. 23 at 2. He also argues that BEK is a federal contractor subject to the Fourth Amendment and that he has pleaded sufficient facts to support his breach of contract, invasion of privacy, and IIED claims. *Id.* at 2-4.

2

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

### B.    *Pro se* parties

The Court subjects a *pro se* party's pleadings to less rigid analysis than those of a party represented by counsel. "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)) . However, "even a liberally-construed *pro se* civil rights complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe

3

of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to state a claim for relief." *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) (internal quotation marks omitted).

### C.    Supplemental jurisdiction

In a suit based on federal question jurisdiction that includes state law claims, the district court has federal jurisdiction over the federal law claims and has discretion whether to exercise supplemental jurisdiction over the remaining state law claims. *Pennie v. Obama*, 255 F. Supp. 3d 648, 677 n.5 (N.D. Tex. 2017) (citing 28 U.S.C. § 1367). But, a "district court has broad discretion to decline to exercise supplemental jurisdiction over state claims if 'the district court has dismissed all claims over which it has original jurisdiction.'" *White v. City of Arlington*, No. 4:22-cv-00886-O, 2023 WL 4188048, at *5 (N.D. Tex. 2023) (quoting 28 U.S.C. § 1367(c)(3)). In making this decision, the Court considers the "common-law factors of 'judicial economy, convenience, fairness, and comity.'" *Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237, 246 (5th Cir. 2022) (quoting *Heggemeier v. Caldwell Cnty.*, 826 F.3d 861, 872 (5th Cir. 2016)).

The Fifth Circuit has stated that courts generally should decline to exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed. *See id.* A district court has discretion to remand to state court a removed case in which the federal claims have been dismissed and only the supplemental state law claims remain. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988), *superseded by statute on other grounds*, *as recognized in Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025).

### D.     Dismissal with or without leave to amend

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible, the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice).

Nonetheless, courts may appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). If the court "outline[s] in [its] opinion the deficiencies" of plaintiff's pleading and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims v. Tester*, No. 3:00-cv-0863-D, 2001 WL 627600, at *2-3 (N.D. Tex. Feb. 13, 2001) (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988)).

## III.     ANALYSIS

### A.     Ellis has not stated a plausible claim that BEK retaliated against him in violation of Title VII and § 1981.

Ellis brings two retaliation claims against BEK under federal law . ECF No. 7 at 5, 9-10. He alleges violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a)) and 42 U.S.C. § 1981. *Id.* Specifically, he argues that BEK "refus[ed] to hire" him in retaliation for his objection to undergoing a drug test. *E.g.*, *id.* at 10. The Court should dismiss both claims.

5

The Court reviews retaliation claims under both statutes with the same analysis. Retaliation claims under both Title VII and 42 U.S.C. § 1981 "require the same proof to establish liability," *Jones v. Gulf Coast Rest. Grp.*, 8 F.4th 363, 368 n.6 (5th Cir. 2021), and the "analysis under both statutes [is] identical." *Jones v. Robinson Prop. Grp., LP*, 427 F.3d 987, 992 (5th Cir. 2005).

Title VII makes it unlawful "to discriminate or take an adverse employment action against an employee who has opposed an employment practice made unlawful by Title VII." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025). To state a retaliation claim under Title VII and its parallel statutes, a plaintiff must allege facts that to establish (1) that he engaged in an activity protected by the statute; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *Gorman*, 753 F.3d at 170.

Protected activity can consist of either: (1) opposing any practice made an unlawful employment practice by Title VII, or (2) making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing under Title VII. *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016) (citing 42 U.S.C. § 2000e-3(a)). The first of these options is the "opposition clause," the second the "participation clause." *Id.*

An adverse employment action is one that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (alteration in original). It need not but can be an action such as "hiring, firing, . . . [or] compensating." *See Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460-61 (citing *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 497 (5th Cir. 2023) (en banc)).

A plaintiff can demonstrate the required causal link between protected activity and the adverse employment action "simply by showing close enough timing between the two events." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019). But "[t]his is, of course, not the only way to establish the causal connection." *Id.* n.1. "[D]emonstrat[ing] that the employer's decision to [take the action] was based in part on knowledge of the employer's protected activity" will also suffice to make a *prima facie* case. *January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023).

At the motion to dismiss stage, a plaintiff is not required to make a showing of each prong of the *prima facie* test for retaliation. *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)). However, he must nonetheless "set forth allegations that would enable the court to reasonably infer that his [prospective] employer . . . took [an] alleged adverse employment action because he engaged in protected activity." *Nieman v. Hale*, No. 3:12-cv-2433-L, 2012 WL 3204990, at *4 (N.D. Tex. Aug. 8, 2012). But Ellis does not sufficiently plead facts to demonstrate that he engaged in protected activity.

Ellis begins by explaining that at the time BEK scheduled his drug test, he had only interviewed with the company and not yet received an offer of employment. ECF No. 7 at 3. This, he argues, conflicts with the substance abuse policy in BEK's employee handbook, which "require[s] all prospective full-time and part-time employees to submit to, and pass, a *post-offer* pre-employment drug screening test." *Id.* at 17 (emphasis added). Ellis characterizes his drug test as "sporadically scheduled," *id.* at 3, and "discriminatory" because Ellis is an African-American applicant. *Id.* at 10. He characterizes his opposition to the drug test as "a protected activity particularly [(1)] because . . . [Ellis] refus[ed] to participate in an action that would violate his

rights," (2) because Ellis "refus[ed] to participation in an action that was against . . . company policy," and (3) because this pre-offer drug test was a "discriminatory practice." *Id.* at 9-10.

      As an initial matter, Ellis pleads no facts alleging that he made a charge, testified, assisted, or participated in any kind of Title VII investigation, proceeding, or hearing. *See generally id.* Therefore, to the extent Ellis engaged in protected activity at all, it must have been activity under the opposition clause. Importantly, the opposition clause does not require Ellis to prove that the conduct he opposed "rose to the level of a Title VII violation," but he "must at least show a reasonable belief that it did." *Taliaferro v. Lone Star Implementation & Elec. Corp.*, 693 F. App'x 307, 310 (5th Cir. 2017); *Rite Way Serv.*, 819 F.3d at 240 (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). In determining whether that belief was reasonable, the Fifth Circuit has "emphasized the importance of the 'severity' and 'frequency' of the alleged conduct." *Taliaferro*, 693 F. App'x at 310 (quoting *Satterwhite v. City of Hous.*, 602 F. App'x 585, 588 (5th Cir. 2015)). The Fifth Circuit also has noted the need to consider the "context in which [the employee] opposed [his] employer's conduct." *Rite Way Serv.*, 819 F.3d at 242. This includes "all relevant circumstances." *Taliaferro*, 693 F. App'x at 311.

      The employment practice that Ellis opposed here was BEK's requirement that he submit to a drug screening test before receiving a job offer. *E.g.*, ECF No. 7 at 5, 9, 10. In support of the reasonableness of his position, Ellis cites to BEK's Employee Handbook. *Id.* at 3. Ellis is correct that an examination of the handbook is warranted. The Fifth Circuit has specifically identified a handbook's written policies as one "relevant circumstance" in assessing whether a belief that an employer or prospective employer violated Title VII was reasonable. *See Taliaferro*, 693 F. App'x at 311. However, to be sure, a handbook's terms are not dispositive. *Id.* at 311-12; *Rite Way Serv.*, 819 F.3d at 244.

The relevant passage of BEK's handbook reads:

> **Drug Screening Tests: [**BEK] will require all prospective full-time and part-time employees to submit to, and pass, a post-offer pre-employment drug screening test. Annual and random drug screens will occur according to applicable state and federal laws. Employees are also subject to drug testing based on reasonable suspicion of use and post-alleged injury, collision, accident or incident.

ECF No. 7 at 17 (emphasis in original).

Ellis argues that "[BEK] violated its own policy by subjecting [him] to a drug screen without first offering [him] a conditional job offer." *Id.* at 3. He also maintains that the company's "own policy prohibited pre offer drug screens." *Id.* Yet both of these characterizations are incorrect. It is important to distinguish what the handbook says from what it does not. The handbook says that BEK will require all post-offer job candidates to undergo drug screening. That, as it happens, is all it says on the pre-offer testing topic.

Beyond that, Ellis reads into the handbook policies that do not appear to exist. The handbook does not say that BEK will (or can) require drug screening from post-offer candidates *only*. And it does not say that BEK will not (or cannot) require a *pre-offer* candidate to undergo that very same screening. Ellis errs when he concludes that just because BEK requires something of one class of job candidates, it must automatically be prohibited from requiring the same from another. Judging at least from the handbook excerpt Ellis quotes, Ellis does not show that BEK violated its own company policy in requiring him to undergo pre-offer drug screening.

But even if it had, Ellis' belief that requiring him to submit to drug screening before receiving his job offer violated Title VII was still not reasonable. Ellis has not pleaded facts sufficient to "raise a right to relief above the speculative level" demonstrating that he reasonably believed that BEK's requiring him to submit to drug screening had anything to do with his race. *Twombly*, 550 U.S. at 555. Ellis argues that the "practice of subjecting [an] African American

9

applicant . . . to an immediate drug screen without first providing a job offer[] was discriminatory in nature." ECF No. 7 at 10. He argues further that the pre-offer drug screening test "disproportionately affected him as an African American applicant." ECF No. 23 at 2. But these statements are mere conclusions.

The facts Ellis pleads to support those conclusions do not suggest that this subjective belief was at all reasonable. Ellis alleges that he applied for a Night Warehouse Trainee position with BEK on September 10, 2023. ECF No. 7 at 2. Later that month, he scheduled an interview with BEK Human Resources Assistant Kason George. *Id.* On October 6, Ellis had his interview with George. *Id.* Ellis alleges that "[i]mmediately" after the interview, George sent him to perform a drug screen and physical examination at Occupational Health Solutions in Fort Worth—a screening site BEK selected. *Id.* George apparently "did not extend a job offer to Ellis prior to the immediate screening of the drug test." *Id.*

On this scarce record, there is nothing to reasonably support Ellis' belief that BEK violated Title VII in its requirement that he be screened for drugs and undergo a physical examination. He does not, for example, state facts showing a discriminatory statement from George or a pattern of BEK requiring only black applicants to undergo pre-offer drug screening or physical exam. Instead, Ellis believes he was discriminated against, but this is not enough to demonstrate actual discrimination. In the absence of anything but speculation, the Court cannot find reasonable Ellis' belief that BEK's pre-offer drug screening requirement violated Title VII.

Moreover, in evaluating the "severity . . . of the alleged conduct," *Taliaferro*, 693 F. App'x at 310, and considering the "context in which [Ellis] opposed [BEK's] conduct," *Rite Way Serv.*, 819 F.3d at 242, the Court arrives at the same conclusion. Ellis applied for a warehouse position. ECF No. 7 at 6. Requiring a prospective employee to undergo drug screening for a such a

position—where heavy lifting and operating machinery will be inevitable—is far from serious or discriminatory in and of itself. On the contrary, from a safety standpoint, it is commonplace. As the BEK handbook provides, "[t]he Company will not accept the safety risks or performance problems which substance abuse can create, and it expects its employees to report for work with no illegal substances in their bodies or their possession." *Id.* at 17.

Therefore, without further facts, and because the BEK handbook does not specifically prohibit pre-offer drug testing and physical examination, the Court cannot conclude that requiring a prospective employee to undergo as routine an evaluation as drug screening for a warehouse position (even if before Ellis had an official job offer) is severe enough to make reasonable Ellis' belief that BEK violated Title VII with this practice. *See also Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) ("It is not objectively reasonable to leap from an observation that one[] . . . [is] being evaluated to the conclusion that race discrimination is the underlying explanation.").

The Court also notes Ellis' explanation that he "protested the [drug] test by refusing to provide a second urine sample to the collector." ECF No. 7 at 3. When the Court sets into context this alleged act of opposition, *Rite Way Serv.*, 819 F.3d at 242, it notes that Ellis did not refuse to submit to the drug test outright. Indeed, he visited the screening site and provided the collector there with one urine sample before ever protesting the screening. ECF No. 7 at 3.

While his compliance with an employment practice that allegedly violates Title VII does not necessarily waive Ellis' ability to complain about that practice, it nonetheless remains striking that he did not object to the drug screening until a screening facility representative asked that he give a second urine sample—this time to be monitored by a male employee. ECF No. 7 at 3-4. While it is unclear why Ellis might have objected to a monitored sample collection after already

providing an unmonitored urine sample to which he did not object, the context in which Ellis opposed BEK's pre-offer drug screening practice all the same weighs against a conclusion that his belief that the practice violated Title VII was reasonable.

Accordingly, because Ellis does not plead facts to show a reasonable belief that BEK's pre-offer drug screening practice violated Title VII, he does not plead facts to show he engaged in protected activity by opposing that practice. Because he does not do so, he does not state a plausible claim that BEK retaliated against him in violation of Title VII and § 1981. Therefore, Chief Judge O'Connor should dismiss Ellis' retaliation claims under federal law.

**B.    Ellis has not stated a claim that BEK violated his Fourth Amendment rights because BEK is a private entity.**

Ellis also claims that BEK conducted an "[u]nreasonable search in violation of the Fourth Amendment." ECF No. 7 at 7. Ellis argues that because BEK "has a federal contractor relationship with the government," it "acted under Color of Law when it immediately scheduled . . . Ellis to undergo a drug test. This action was taken to provide a drug free workplace pursuant to 41 U.S.C. §[]701." *Id.* at 8. But this claim is meritless, and the Court should dismiss it.

As a basic matter, the Fourth Amendment only proscribes governmental action. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "So a wrongful search or seizure by a *private* party cannot violate a person's Fourth Amendment rights." *Heidi Grp., Inc. v. Tex. Health & Hum. Servs. Comm'n*, 138 F.4th 920, 931 (5th Cir. 2025) (emphasis in original) (internal quotation marks omitted). Ellis does not dispute that BEK is a private company, but he argues that it is a "federally contracted private company." ECF No. 7 at 7. The Fourth Amendment, he contends, "protects people from unreasonable searches and seizures by the government, [which] include[es] federally contracted private businesses." *Id.*

This contention is generally inaccurate. "The '[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts'" *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982)). Only when a private party "act[s] as an instrument or agent of the government," does the Fourth Amendment apply. *Kipp v. LTV Aerospace & Def.*, 838 F. Supp. 289, 292 (N.D. Tex. 1993). A private party in free contract with the federal government does not assume an agency relationship that implicates the Fourth Amendment since the company deals with the government "in its capacity as a party to a contract with a private party," not "its sovereign capacity." *Id.* In such a contractual relationship, the Fourth Amendment "simply does not apply" to the private contractor's conduct. *Id.* BEK is a private entity and was not dealing with Ellis in "its sovereign capacity." The Fourth Amendment therefore does not apply to its conduct with Ellis.

But Ellis also argues that as a federal contractor, BEK must abide by 41 U.S.C. § 701, which, among other provisions, provides that "[a] person other than an individual shall not be considered . . . for the purposes of being awarded a contract . . . by a Federal agency, . . . unless the person agrees to provide a drug-free workplace." 41 U.S.C. § 701 (current version at 41 U.S.C. § 8102). In requiring him to undergo drug screening, Ellis says, BEK was abiding by a contractual condition that the federal government set and thus acting under "Color of Law." ECF No. 7 at 8. But this is incorrect. Notwithstanding Ellis' lack of proffered support for the allegation that BEK even had a contract with the federal government, the Supreme Court has been quite clear that:

> [n]umerous private entities in America obtain government licenses, government contracts, or government-granted monopolies. If those facts sufficed to transform a private entity into a state actor, a large swath of private entities in America would suddenly be turned into state actors and be subject to a variety of constitutional constraints

13

on their activities. As this Court's many state-action cases amply demonstrate, that is not the law.

*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814-15 (2019).

Therefore, even if BEK follows a federal regulatory requirement to maintain its alleged contract—such as a requirement to provide a drug free workplace—that act of adhering to federal requirements does not transform such compliance into state conduct or BEK into a state actor. *See Kipp*, 838 F. Supp. at 292 ("The federal government did not require [Defendants] to bid for . . . contracts. . . . The [] Defendants were required to implement a drug-testing program as a condition of the contracts only after the government had awarded them the contracts. The Fourth Amendment [] does not apply.").

As a private entity, BEK generally cannot be liable to Ellis under the Fourth Amendment. Because the Court cannot construe the facts to provide the basis for a plausible claim under the Fourth Amendment, the undersigned recommends that Chief Judge O'Connor dismiss Ellis' Fourth Amendment claim with prejudice.

## C. The Court should decline to exercise supplemental jurisdiction over Ellis' state law claims.

In the First Amended Complaint, Ellis pleads only that the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 for his civil rights claims under Title VII and § 1981 and supplemental jurisdiction over his "related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a)." ECF No. 7 at 1. Thus, the Court has federal question jurisdiction over Ellis' Title VII and § 1981 claims and only supplemental jurisdiction for his claims for violation of § 21.055 of the Texas Labor Code, breach of contract, invasion of privacy, and IIED. *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) ("[T]he basis upon which jurisdiction

depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference."). Ellis does not allege that his state law claims raise any issue of federal law.

Because the Court should dismiss Ellis' federal claims, it also considers whether "judicial economy, convenience, fairness, and comity," *Manyweather*, 40 F.4th at 246, favor remand of the case to state court. Considering that the case is still in the preliminary stages, has not been set for trial, and has not involved extensive briefing beyond the pending Motion, the undersigned recommends that Chief Judge O'Connor decline to exercise supplemental jurisdiction over Ellis' state law claims and instead remand them to the 352nd Judicial District Court of Tarrant County, Texas, where the case began. *See Pennie*, 225 F. Supp. 3d at 677 n.5; *Cohill*, 484 U.S. at 357.

**D.    The Court should dismiss Ellis' complaint without leave to amend.**

The decision to allow amendment of the pleadings is within the sound discretion of the Court. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). In determining whether to allow an amendment of the pleadings, the Court considers: undue delay in the proceedings, undue prejudice to the opposing parties, timeliness of the amendment, and futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982). "At some point, a court must decide that a plaintiff has had fair opportunity to make [his] case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986); *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563 (5th Cir. 2003).

Ellis' federal claims under Title VII, § 1981, and the Fourth Amendment are legally deficient for the reasons stated above, and further amendment would be futile. *Schiller*, 342 F.3d at 566. The Court finds that additional amendment or revisions to the First Amended Complaint would be an inefficient use of the Court's resources, would cause unnecessary delay, and would

be futile. Ellis apparently has pleaded his best case possible under the existing facts, though he is not entitled to the relief he seeks on his federal law claims. Because he could not successfully bring a claim even if given the opportunity to file another amended complaint, the Court should dismiss Ellis' federal law claims under Title VII, § 1981, and the Fourth Amendment without leave to amend.

## IV.     CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** BEK's Motion to Dismiss (ECF No. 8) **in part** and **DISMISS** Plaintiff's claims for retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 and for violation of the Fourth Amendment of the United States Constitution. After dismissing these federal law claims, Chief Judge O'Connor should decline to exercise supplemental jurisdiction over the Plaintiff's remaining state law claims and **REMAND** them to the 352nd Judicial District Court of Tarrant County, Texas**.**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except

upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

      **SIGNED** on October 1, 2025.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE